UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-82328-CIV-COHN/SELTZER

LINDA M. CINNANTE,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

### I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed,

respectively, by Plaintiff Linda M. Cinnante ("Claimant") and by Defendant Michael J.

Astrue, Commissioner of Social Security ("Commissioner"). The motions were referred to

United States Magistrate Judge Barry S. Seltzer pursuant to Magistrate Rule 1(c) and (d),

Local Rules of the United States District Court for the Southern District of Florida.

The cross-motions present the following issue: whether there exists substantial

evidence to support the determination by the Administrative Law Judge ("ALJ") that

Claimant is not disabled as there exists other jobs in the national economy that she can

perform. The undersigned concludes that substantial evidence does support the ALJ's

determination. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion for

---

[1] Although other circuits have found the summary judgment device inappropriate
for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d
1383, 1389 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court
has reviewed the record and based its judgment on a finding of substantial evidence in the
administrative record. See Lovett v. Schweiker, 667 F.2d 1, 2-3 (5th Cir. 1981).

Summary Judgment (DE 15) be DENIED. The undersigned further RECOMMENDS that Defendant's Motion for Summary Judgment (DE 22) be GRANTED and that the Commissioner's decision be AFFIRMED.

## II.   PROCEDURAL HISTORY

On December 6, 2007, Claimant filed for a period of disability and disability insurance benefits, alleging that she became unable to work on June 24, 2006. Tr. 83-84, 105, 110. In her Disability Report, she attributed her alleged inability to work to Meniere's disease[2] and a back injury. Tr. 110. The Social Security Administration denied her application initially on March 21, 2008, and upon reconsideration on July 23, 2008. Tr. 67-69, 76-77.

Thereafter, Claimant was granted an administrative hearing, which was held on February 10, 2009. Tr. 23. On May 6, 2009, the ALJ rendered his decision, finding that Claimant was not under a "disability" as defined in the Social Security Act. Tr. 12-22. On September 16, 2009, the Appeals Council of the Social Security Administration denied Claimant's request for review, which left the ALJ's decision standing as the final decision of the Commissioner. Tr. 1-3.

On November 18, 2009, Claimant filed a Complaint (DE 1) in this Court. On March 3, 2010, the Commissioner filed an Answer (DE 12), together with the administrative record (DE 13). On April 2, 2010, Claimant filed a Motion for Summary Judgment (DE 15). On

---

[2] "Meniere's disease is a disorder of the inner ear that causes abnormal sensory perceptions, including a sensation of a spinning motion (vertigo), hearing loss usually in one ear, fullness or pressure in the same ear, and ringing in the same ear (tinnitus)." www.mayoclinic.com/health/menieres-disease/DS00535.

May 25, 2010, the Commissioner filed Defendant's Motion for Summary Judgment with

Supporting Memorandum of Law (DE 22).

The matter is now ripe for decision.

III.    FACTS

The undersigned has reviewed the Statement of Facts contained within Defendant's

Motion for Summary Judgment and finds that it fairly and accurately summarizes the

relevant portions of the administrative record.[3]

> Plaintiff filed her application for benefits on December 6, 2007,
> alleging disability since June 24, 2006, due to Meniere's
> disease and a back injury (Tr. 83-85, [105,] 110). At her
> February 2009 administrative hearing, Plaintiff was 45 years
> old and had past relevant work as a store security officer (Tr.
> 25, 28).
>
> Five years prior to Plaintiff's alleged onset date, Plaintiff was
> diagnosed with Meniere's disease after complaining of
> headaches and vertigo (Tr. 156). Her MRIs were negative and
> a physical examination showed normal tympanic membranes
> (Tr. 156).
>
> On June 29, 2006, Plaintiff saw Peter Lamelas, M.D., at MD
> Now Medical Center, and complained of lower back pain . . .
> (Tr. 158). She denied experiencing headaches, joint pain,
> weakness, or dizziness (Tr. 158). She smoked half a package
> of cigarettes a day and was not taking any medication (Tr.
> 158). Upon examination, Plaintiff had normal strength (Tr. 158-
> 59). She required assistance for ambulation, but her gait was
> normal (Tr. 158-59). Dr. Lamelas diagnosed Plaintiff with back
> pain due to lumbosacral sprain (Tr. 159).
>
> On July 5, 2006, Plaintiff's optometrist wrote a letter stating
> that Plaintiff had night blindness and was restricted to daytime
> driving (Tr. 196).
>
> Plaintiff returned to the medical center on July 6, 2006 (Tr.

---

[3] The undersigned has bracketed minor corrections to the Statement of Facts.

161). She had some muscle spasms, but her gait was normal (Tr. 161). She was released for light duty work and instructed to begin physical therapy and continue using her medication (Tr. 16[3]).

Plaintiff saw Arturo Gaza, M.D., on July 13, 2006, and complained of low back pain (Tr. 164). She had some muscle spasms, but her spine was normal and her gait was steady (Tr. 164). Her musculoskeletal examination was also normal and she had normal motor strength (Tr. 165). Dr. Gaza diagnosed Plaintiff with back pain and restricted her to a two-week period of limited duty work (Tr. 165[, 168]). While on restriction, she could lift no more than five pounds, stand and walk up to two hours [in] a[n eight hour work] day, and sit up to two hours [in] a[n eight hour work] day (Tr. 168).

Plaintiff began physical therapy on July 19, 2006 (Tr. 171-73). She reported that she was working full time on light duty (Tr. 171). Her physical therapist concluded that her rehabilitation potential was good (Tr. 172).

On July 20, 2006, an MRI of Plaintiff's thoracic spine showed a small herniation at T3-4 and a herniation at T7-8 (Tr. 166, 189). An MRI of her lumbar spine showed bulging discs [at L4-5 and L5-S1] and mild lumbar straightening (Tr. 167, 188). Plaintiff was diagnosed with herniated disc syndrome (Tr. 176).

Plaintiff had an appointment with Jane Bistline, M.D., on September 1, 2006, and complained of back pain radiating into her right lower extremity (Tr. 2[3]3). Upon examination, Plaintiff had full muscle strength and normal bulk in her upper and lower extremities (Tr. 234). She had a limited range of motion toward the end ranges of her lumbosacral area, but a full range of motion in her cervical spine (Tr. 234). Dr. Bistline diagnosed Plaintiff with lumbago, lumbar radiculopathy, thoracalgia, thoracic radiculopathy, and thoracic disc herniation at T7-8 and T3-4 (Tr. 234-35). She prescribed Darvocet, Tizanidine, and Mobic, and recommended epidural steroid injections (Tr. 235).

Plaintiff had another physical therapy appointment on September 11, 2006 (Tr. 183). She reported that she had been fired from her job because she refused to climb a ladder or bend to a bottom shelf (Tr. 184).

Plaintiff returned to Dr. Bistline's office on September 2[5],

4

2006, for medication refills (Tr. 23[2]). She was doing well on her medicinal regimen and had increased activities of daily living (Tr. 23[2]). The next month, Dr. Bistline recommended an epidural steroid injection after Plaintiff reported continued low back pain (Tr. 231).

On December 8, 2006, Plaintiff saw Dr. Bistline and reported no significant changes in symptomatology (Tr. 229). Her active range of motion was limited toward the end ranges in her lumbar spine, but she had full muscle strength and was doing well on her medicinal regimen (Tr. 229). Two months later, Plaintiff continued to report no change in her symptomatology and no side effects from her medication (Tr. 228). She also reported increased activities of daily living (Tr. 228).

Plaintiff returned to Dr. Bistline's office in March and April of 2007 (Tr. 224-26). At both appointments, Plaintiff reported increased activities of daily living (Tr. 224, 226). The range of motion in her thoracic and lumbar spine was limited, but she had full strength in her lower extremities (Tr. 224, 226).

Plaintiff had epidural steroid injections in May and June of 2007 (Tr. 22[1], 222[, 2]23). On June 12, 2007, she returned to Dr. Bistline's office for medication refills (Tr. 220). She told Dr. Bistline that her medication improved her functionality and decreased her pain (Tr. 220).

On July 17, 2007, Plaintiff met with Jeffrey Kugler, M.D., and complained of headaches and neck and back pain (Tr. 238). She had no tenderness in her thoracic spine, but her flexion and extension were slightly decreased (Tr. 239). An MRI of her lumbar spine showed good disc height, an L3-4 disc bulge, and L5-S1 disc bulge (Tr. 239). Dr. Kugler diagnosed Plaintiff with cervicalgia with radiculopathy, thoracalgia, and lumbago (Tr. 239). He recommended a lumbar discogram and possible decompression (Tr. 239).

Plaintiff returned to Dr. Bistline's office on July 26, 2007, and denied any change in her symptomatology (Tr. 217). Her physical examination was unchanged (Tr. 218). She told Dr. Bistline that Dr. Kugler had released her to light duty work (Tr. 217).

Plaintiff saw Dr. Kugler on August 14, 2007, and complained of back, shoulder, and [lower extremity pain] (Tr. 236). She

had mild tenderness in her cervical spine and spasms in her thoracic and lumbosacral spine (Tr. 236[-237]). Her gait was antalgic, but there was no instability of her lumbosacral spine (Tr. 237).

A few days later, Plaintiff had a follow-up appointment with Dr. Bistline (Tr. 215). She had full strength in her lower extremities, but decreased flexion and extension in her lumbar spine (Tr. 21[5]). The next month, Plaintiff continued to have restricted motion in her lumbar spine, but she had full motor strength and admitted increased activities of daily living (Tr. 214).

On September 11, 2007, Plaintiff had an appointment with Dr. Kugler and complained of stiffness in her lower back and pain radiating into her lower extremities (Tr. 240). Upon examination, Plaintiff exhibited mild tenderness in her lumbar spine, but had no significant gait abnormalities (Tr. 240). The next month, Plaintiff had an antalgic gait, but no instability in her lumbosacral spine (Tr. 242).

Plaintiff met with Dr. Bistline again on October 30, 2007 (Tr. 213). Plaintiff complained of low back pain, but reported increased activities of daily living with her medication (Tr. 213). Upon examination, Plaintiff had muscle spasms and a limited range of motion toward the end ranges in her lumbar spine (Tr. 213). She had full strength in her lower extremities (Tr. 213). Dr. Bistline noted that Plaintiff was stable on her medicinal regimen (Tr. 213).

Plaintiff had monthly appointments with Dr. Bistline from November 2007 until June 2008 (Tr. 197-21[2]). At each appointment, she reported increased activities of daily living and denied any side effects from her medication (Tr. 199, 200, 204, 206, 208, 210). Her physical examinations showed some muscle spasms and decreased range of motion toward the end ranges in her lumbar spine, but she had full strength in her lower extremities (Tr. 197[, 1]99, 200, 204, 206, 209, 210).

On January 8, 2008, Plaintiff met with Dr. Kugler and complained of muscle spasms and intermittent tingling radiating into her lower extremities (Tr. 244). She had an antalgic gait, but no instability of her lumbosacral spine (Tr. 244). Dr. Kugler noted that Plaintiff's request for a lumbar discogram had been denied because Plaintiff had previously experienced difficulty with anesthesia (Tr. 244).

6

Plaintiff had a consultative examination with Thomas Thomas, M.D., on February 2[3], 2008 (Tr. 246). She complained of back pain, but told Dr. Thomas that she was reluctant to have surgery because she had a past reaction to anesthetic (Tr. 246). She also reported a history of Meniere's disease and stated that her last episode occurred eight months before (Tr. 246). She denied experiencing headaches (Tr. 247). Plaintiff estimated that she could stand for 15 minutes at a time, up to 60 minutes in an 8-hour workday, walk for [5 to]10 minutes, sit for 15 minutes, and lift no more than [5] pounds (Tr. 246). Upon examination, Plaintiff walked slowly, but she was ambulatory and did not require an assistive device (Tr. 248). She exhibited tenderness over the paraspinal muscle, but no evidence of any muscle spasms or joint swelling (Tr. 248). She had normal flexion and extension in her cervical spine (Tr. 248). Dr. Thomas diagnosed Plaintiff with sciatica, history of a herniated lumbar disc, and history of Meniere's disease (Tr. 249). He opined that Plaintiff would have limitations with sitting, standing, and walking for more than one hour (Tr. 249).

Gary Cater, D.O., a state agency reviewing physician, completed a physical residual functional capacity assessment of Plaintiff on March 20, 2008 (Tr. 250-57). After reviewing Plaintiff's records, Dr. Cater opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday (Tr. 251). Dr. Cater noted that although Plaintiff stated that she could not walk for long periods of time, she had a normal gait and did not require an assistive device (Tr. 251). Dr. Cater also determined that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but could never climb ladders, ropes, or scaffolds (Tr. 252).

On March 26, 2008, Plaintiff had a preoperative appointment (Tr. 191). She continued to smoke half a package of cigarettes a day (Tr. 191). She had a decreased range of motion in her back, but all of her other extremities were normal and she was active and ambulatory (Tr. 192). Mark W. Holder, M.D., opined that Plaintiff could stand/walk for four to six hours in an eight-hour workday and sit four to six hours in an 8-hour workday (Tr. 194).

Ira Price, M.D., a state agency reviewing physician, completed a physical residual functional capacity assessment for Plaintiff

> on July 23, 2008 (Tr. 258-65). He opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk about 6 hour in an 8-hour workday; and sit about 6 hours in an 8-hour workday (Tr. 259). She could occasionally climb, balance, stoop, kneel crouch, and crawl (Tr. 260).
>
> Plaintiff testified at an administrative hearing on February 10, 2009 (Tr. 23-38). She was 45 years old and lived with her husband (Tr. 25-26). She had previously worked at K-Mart as a security officer (Tr. 28, 30). She stated that she injured her back at work and had herniated discs (Tr. 30). She also testified that she was diagnosed with Meniere's disease in 2001(Tr. 31). As to her daily activities, Plaintiff reported that she drives to the supermarket twice a week, prepares simple meals, and does light housework (Tr. 27-28, 33-34). She estimated that she could walk half a block, stand up to 20 minutes, sit up to 25 minutes, and lift 10 pounds (Tr. 32).

Defendant's Motion at 2-8 (DE 22).

## IV. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the court's role is a limited one. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." Richardson v. Perales, 402 U.S. 389 (1971); Bloodsworth, 703 F.2d at 1239. "Substantial evidence" is evidence that a reasonable person would accept as adequate to support the challenged conclusion. Richardson, 402 U.S. at 401; Walden v. Schweiker, 627 F.2d 835, 839 (11th Cir. 1982). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

8

## V.    ANALYSIS

### A.    The Sequential Evaluation

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining the merits of a claim for benefits, the court must consider the evidence as a whole, including: 1) objective medical facts or clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age, education, and work history. Walden, 671 F.2d at 839.

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is "severe" if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If a severe impairment is not found, the ALJ must conclude that there is no disability; if a severe impairment is determined, the ALJ proceeds to the next phase of the analysis. Id.

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix I of the Regulations. 20 C.F.R. § 404.1520(d).

9

If so, the ALJ must find the claimant disabled without considering age, education, and work experience. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(e). The Regulations define "residual functional capacity" as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). This determination takes into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. Id. The ALJ must then compare the residual functional capacity to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. § 404.1520(e).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, the burden returns to the claimant to prove an inability to perform those jobs. Id. These shifting burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy. 20 C.F.R. § 404.1520(f).

To help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, Subpt. P, App. 2. The Guidelines

may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. § 404.1569. The Guidelines are composed of detailed grids and rules which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors," and they are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. § 404.1569. The Guidelines, therefore, are not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991). Further, they may not be used when the claimant suffers from nonexertional limitations, such as mental impairments. Hargis, 945 F.2d at 1490; Walker, 826 F.2d at 1003. When the Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of residual functional capacity. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry his burden through the use of a vocational expert. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Wingo v. Bowen, 852 F.2d 827, 831 n. 4 (5th Cir. 1988); Walker, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Walker, 889 F.2d at 50.

## B.   Application of the Sequential Evaluation by the ALJ

After considering all of the evidence before him, the ALJ concluded that Claimant, although unable to return to her former employment, is nevertheless capable of performing

11

"the full range of sedentary work" and, therefore, is not disabled for purposes of the Social Security Act. Tr. 21, 22.

In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.[4] He first observed that Claimant had not engaged in substantial gainful activity since June 24, 2006, her alleged onset date. Tr. 17. The ALJ next found that Claimant has the following "severe" impairments: "degenerative disc disease, Meniere's disease, and headaches." Tr. 17. The ALJ then found Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. Tr. 17.

The ALJ then assessed Claimant's residual functional capacity ("RFC"). As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints. After reviewing the evidence and the testimony, the ALJ found that Claimant's complaints were "not credible." Tr. 18-19. More specifically, he found that "the [C]laimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual capacity assessment . . . ." Tr. 18-19. After considering the record before him, the ALJ found that "[C]laimant has the [RFC] to perform the full range of sedentary

---

[4] Preliminarily, the ALJ noted that Claimant had acquired sufficient quarters of coverage to remain insured through December 31, 2011. Tr. 15, 17. Accordingly, Claimant was required to establish disability on or before that date to be entitled to disability benefits. Tr. 15.

work[5] as defined in 20 C.F.R. 404.1567(a)." Tr. 17.

Having found that Claimant is capable of performing sedentary work, the ALJ next considered whether Claimant has the ability to perform her "past relevant work as a store security officer." Tr. 21. The ALJ determined that she is unable to return to her past relevant work because it is classified as "light semiskilled work." Tr. 21.

Given that Claimant could not return to her past relevant work, the ALJ proceeded to examine whether other jobs exist to which Claimant is capable of making a vocational adjustment. Tr. 21. The ALJ noted that the Claimant was 42 years old (defined as a "younger individual" under 20 C.F.R. § 404.1563) on the alleged onset date, that she has at least a high school education, and that she is able to communicate in English. Tr. 21. Applying these factors,[6] in combination with Claimant's RFC for sedentary work, to the Guidelines enabled the ALJ to find that "there are jobs that exist in significant numbers in the national economy that the [C]laimant can perform." Tr. 21. To support this finding, the ALJ looked to Rule 201.28 and Rule 201.21 of the Medical Vocational Guidelines, which

---

[5] The Code of Federal Regulations defines "sedentary work" as:

> [work involving] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

[6] The ALJ noted that "[t]ransferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Tr. 21.

direct a conclusion of "not disabled." Tr. 21. Accordingly, the ALJ held that Claimant "has not been under a disability, as defined in the Social Security Act, from June 24, 2006 through the date of this decision." Tr. 22.

C.    Discussion

Claimant disputes the findings and conclusions of the ALJ. Claimant argues that the ALJ erred in discounting the assessment and opinion of a physician, Dr. Thomas. Claimant also argues that the ALJ erred in discounting her subjective complaints. Finally, Claimant argues that the ALJ erred in finding that she could perform the full range of sedentary work and that she did not have significant non-exertional limitations, which, in turn, resulted in the ALJ improperly relying on the Guidelines to conclude that she is not disabled. Id. at 17, 19 (DE 15). The undersigned, however, does not find Claimant's arguments persuasive.

1.    The ALJ Properly Discounted the Opinion of Dr. Thomas

Claimant faults the ALJ for not according controlling weight to the opinion of one of her physicians, Dr. Thomas, who had completed a physical examination. Plaintiff's Motion at 17 (DE 15). According to Claimant:

> The regulations require that the findings of the treating physician as to the severity of an impairment be accorded controlling weight if they are well-supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2). It is the general rule of this Circuit that the ALJ is required to give explicit and adequate reasons for rejecting such medical evidence. See Elam v. R.R. ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991). As is discussed above, the ALJ did not give proper weight to the medical opinions of Dr. Thomas, and did not giv[e] adequate reasons for rejecting his medical opinion.

14

Id.

Although the Regulations do require that an ALJ give more weight to the opinion of

a treating source, see 20 C.F.R. § 404.1527(d)(2), Claimant is incorrect in characterizing

Dr. Thomas as a treating source.[7] Because Dr. Thomas examined Claimant solely for the

purpose of providing the state disability office with information – it was "not done for any

diagnostic, treatment or followup purposes," Tr. 246 – the ALJ properly characterized Dr.

Thomas as a "consultative" physician, Tr. 21, which is classified as a "nontreating source."[8]

_____

[7] The Code of Federal Regulations defines "treating source" as:

> [A Claimant's] own physician, psychologist, or other
> acceptable medical source who provides [a Claimant], or has
> provided [a Claimant], with medical treatment or evaluation
> and who has, or has had, an ongoing treatment relationship
> with [a Claimant]. [An ongoing treatment results] when the
> medical evidence establishes that [a Claimant] see[s], or ha[s]
> seen, the source with a frequency consistent with accepted
> medical practice for the type of treatment and/or evaluation
> required for [a Claimant's] medical condition(s). We may
> consider an acceptable medical source who has treated or
> evaluated [a Claimant] only a few times or only after long
> intervals (e.g., twice a year) to be [a Claimant's] treating
> source if the nature and frequency of the treatment or
> evaluation is typical for [a Claimant's] condition(s). We will not
> consider an acceptable medical source to be [a Claimant's]
> treating source if [a Claimant's] relationship with the source is
> not based on [a Claimant's] medical need for treatment or
> evaluation, but solely on [a Claimant's] need to obtain a report
> in support of [a Claimant's] claim for disability. In such a case,
> we will consider the acceptable medical source to be a
> nontreating source.

20 C.F.R. § 404.1502 (2006).

[8] The Code of Federal Regulations defines "nontreating source":

> a physician, psychologist, or other acceptable medical source
> who has examined [a Claimant] but does not have, or did not

As such, Dr. Thomas' opinion is not accorded the same controlling weight as would be accorded a treating source's opinion. See Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984).

When controlling weight is not accorded the opinion, the ALJ must consider the specialization of the physician, the length of the treatment relationship, the nature and frequency of the examinations, the evidence offered in support of the opinion, and the consistency of that opinion with the record as a whole.   20 C.F.R. § 404.1527(d).  Dr. Thomas is a consultative physician who saw Claimant on only one occasion and acknowledged that the "exam was done only for the purpose of providing information to the state disability office for their use in making a determination of disability and was not done for any diagnostic, treatment or followup purposes."  Tr. 246.  Unlike Dr. Kugler, Dr. Thomas' notes do not show that he holds any particular expertise or board certification in the area of practice pertinent to Claimant's impairment(s).  After reviewing Dr. Thomas' records, the ALJ determined that this consultative examiner's opinion regarding Claimant's ability to stand, walk, and sit not only "appeared to be based on her demeanor and performance at the examination," but also did "not correlate with the totality of the evidence of record."  Tr. 21.  See Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (ALJ is not required to accept opinion from any source if inconsistent with remaining evidence).  Here, Claimant herself had reported increased daily activities and pain relief from her medication

> have, an ongoing treatment relationship with [a Claimant]. The term includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not [a Claimant's] treating source.

20 C.F.R. § 404.1502 (2006).

regimen. Moreover, Claimant's treating orthopedist, Dr. Kugler, has not precluded her from working; rather, according to Claimant, Dr. Kugler "has her on light duty."[9] Tr. 199, 200, 204, 206, 208, 210, 211, 213, 214, 217, 220, 224, 226, 228. The ALJ, therefore, provided adequate reasons for discounting the opinion of the consultative examiner, Dr. Thomas.

2. The ALJ Properly Discounted Claimant's Subjective Complaints

Claimant argues that the ALJ erred by discounting her subjective complaints. According to Claimant, "the ALJ failed to apply the proper standard when he evaluated and ultimately rejected [Claimant's] complaints regarding her subjective symptoms." Claimant's Motion at 19 (DE 15).

An ALJ's assessment of a claimant's subjective complaints is governed by 42 U.S.C. § 423(d)(5)(A), which states in part:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . , would lead to a conclusion that the individual is under a disability.

The Eleventh Circuit has stated that an individual alleging disabling pain must show not only evidence of an underlying medical condition, but also either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can

---

[9] The undersigned notes that in addition to (treating orthopedist) Dr. Kugler releasing Claimant to light duty, the personnel at the medical clinic she frequented ("MD Now Medical Centers") opined that Claimant can perform "light duty." Tr. 163.

reasonably be expected to give rise to the alleged pain." Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1985)). "This standard also applies to complaints of subjective conditions other than pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Only once this standard is met must the ALJ then consider a claimant's subjective complaints. Foote v. Chater, 62 F.3d 1553, 1560-61 (11th Cir. 1995). The ALJ, however, is not required to credit those complaints; he may discount them provided he "articulates adequate reasons for doing so." Id. at 1561-62. Having reviewed the ALJ's decision, the undersigned finds that the ALJ did articulate adequate reasons for discounting Claimant's subjective complaints.

The ALJ's decision shows that before finding that Claimant had an RFC for sedentary work, he found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible." Tr. 18-19. Further, the ALJ devoted three pages of his decision to articulating the reasons for discounting Claimant's complaints. Tr. 18-20. In pertinent part, the ALJ spoke to several of Claimant's complaints – lumbar and cervical pain, headaches, and symptoms from Meniere's disease:

> The claimant treated regularly with Dr. Bistline for pain management. Although she did not respond to a series of 3 epidural injections, she benefit[t]ed from her medication regimen with no side effects and improvement in her functioning and ability to engage in her daily activities. The claimant reported improvement in her neuropathic complaints with the use of Neurontin. Although she had an episode of cervical pain, it appears that that was short lived, and was mentioned at approximately 2 office visits without further indication that it persisted. The claimant also reportedly saw a neurologist for evaluation of her headaches, however, that report does not appear in the record, and there is therefore no documentation of a neurological examination or diagnosis regarding her headaches, nor is there any long term treatment, other than the brief use of Topamax, which was discontinued

18

> due to side effects. In addition, the record contains little to no evidence with regard to the claimant's diagnosis or treatment for Meniere's disease. The claimant testified that she was diagnosed with the condition in 2001 and continued to work for several years with that condition, although she claimed that it affected her work to some degree. Given the minimal evidence in the record regarding this condition, the undersigned [ALJ] does not find it to have a substantial impact on the claimant's ability to work. Thus, the undersigned finds that the claimant is capable of performing sedentary work in that the evidence demonstrates that she obtains adequate pain relief from her medication regimen. Although her examinations have revealed that she has muscle spasm and decreased range of motion, Dr. Bistline's progress notes indicate that Dr. Kugler [treating orthopedist] released her to light duty work (Ex. 4F).

Tr. 20.[10] As is self-evident from the ALJ's decision, he adequately articulated his reasons for discounting Claimant's subjective complaints. He noted that her back pain and functionality improved with medication, that she worked for five years after being diagnosed her Meniere's disease, that she provided little evidence of treatment for the Meniere's disease or for her alleged headaches, and that her own treating orthopedist – Dr. Kugler – released her to light duty work. See, e.g. Wolfe, 86 F.3d at 1078 (holding that allegations of disabling pain may be discounted because of inconsistencies such as conservative

---

[10] The record contains additional evidence casting doubt on the credibility of Claimant's subjective complaints. On March 20, 2008, Dr. Carter, the state agency reviewer, opined that Claimant could stand, walk, and sit for about 6 hours in an 8-hour workday. In addition, on March 26, 2008, Claimant was examined by Dr. Holder, who noted that she could stand, walk, and sit for 4-6 hours, as well as bend, squat, and kneel for 2-4 hours, both in an 8-hour workday. Tr. 194, 251. In October 2007, Dr. Bistline concluded that Claimant was stable while on the medication and without any side effects. And on June 17, 2008, Dr. Bistline's examination notes indicate that although Claimant has a decreased range of motion of the lumbar spine, her muscle strength of the lower extremities is 5/5. Tr. 197. Finally, at the hearing, Claimant conceded that she does not have any difficulties with her neck. Tr. 35. These records are inconsistent with Claimant's allegations of disabling symptoms.

19

medical treatment); Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (conditions that can be reasonably remedied by treatment or medication are not disabling); Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (ALJ properly considered Claimant's failure to seek medical treatment).

Significantly, the issue for the ALJ is not whether Claimant has some pain and limitations; rather, the issue is "how severe th[e] pain [and limitations are] and whether [they] prevent[] [her] from performing any kind of work." Clark v. Chater, 75 F.3d 414, 417 (8th Cir. 1996) (citation omitted). Here, the ALJ found that Claimant's complaints were not credible to the extent alleged, and he articulated adequate grounds for his finding. See Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992) (lack of objective medical evidence and claimant's exaggerations and contradictions cast doubt on claimant's credibility). Where an ALJ clearly articulates a credibility finding with substantial supporting evidence, as the ALJ did here, a reviewing court may not disturb such a finding. See Foote, 67 F.3d at 1652.

### 3. ALJ's Application of the Medical Vocational Guidelines

Claimant argues that the ALJ erred in conclusively applying the Medical Vocational Guidelines. See Motion at 17-18 (DE 15). According to Claimant: "[her] inability to perform a full range of work at any exertional level and the presence of non-exertional impairments is clear from the record." Claimant's Motion at 17 (DE 15). Hence, Claimant bases her argument against conclusive application of the Guidelines on the assumptions that she cannot perform even sedentary work and, further, that she has significant nonexertional impairments, which (if accurate) would require the ALJ to secure the testimony of a

vocational expert. Significantly, Claimant rests her assumption that she cannot perform even sedentary work on the opinion of Dr. Thomas, the one-time consultative examiner: "When looking at the limitations assigned by Dr. Thomas, as to her abilities to walk, stand and sit for no more than an hour, would put her at a work level that is below the sedentary level." Id. at 18. And Claimant rests her assumption that she has significant nonexertional impairments on the following allegations: "[s]he suffers from pain"; "[s]he also has night blindness"; "[t]he effects of [her] Meniere's disease"; and her limitations on walking, sitting, and standing. Id. From these allegations, Claimant reasons that the ALJ erred by conclusively applying the Guidelines to find that there are other jobs in the national economy that she can perform. See id.

Claimant is correct to the extent she argues that "[t]he ALJ should not rely exclusively on the grids when the claimant has a nonexertional impairment that significantly limits [her] basic work skills or the claimant cannot perform a full range of employment at the appropriate level of exertion." Wolfe, 86 F.3d at 1077. But the Circuit has also "recognized that the grids may be used in lieu of vocational expert testimony on specific jobs if none of the claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Id. at 1078 (quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992)) (internal quotations omitted). "[W]hether the non-exertional limitations are severe enough to preclude a wide range of employment at a given capacity level" is a finding reserved to the ALJ. Foote, 67 F.3d at 1559. The question [the Court] must answer is whether substantial evidence supports the ALJ's findings that [Claimant's] non-exertional impairments do not limit [her] ability to perform sedentary work." Perry v. Astrue, 280 Fed. Appx. 887, 895 (11th Cir. 2008) (unpublished) (citations omitted).

The ALJ here had substantial evidence upon which to find that Claimant retains "the residual functional capacity to perform the full range of sedentary work." Tr. 17. Although Claimant relies upon the opinion of Dr. Thomas to argue that she cannot perform even sedentary work, as discussed supra, the ALJ rejected this consultative examiner's opinion as to his assessed limitations on standing, walking, and sitting. Instead the ALJ relied on the notes of the treating physicians to find that Claimant's "pain is adequately alleviated with her medication regimen" and that she "was released to work at a light duty capacity."[11] Tr. 21. Although Claimant invokes her subjective complaints to argue that she has significant nonexertional impairments, as discussed supra, the ALJ had substantial evidence to discount the subjective complaints as to pain and Meniere's disease and to find that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." Tr. 18-19. Yet, Claimant now adds "night blindness" as a nonexertional impairment precluding conclusive application of the Guidelines. The record does contain one brief (three-sentence) note from an optometrist disclosing that Claimant has night blindness. Tr. 196. The note, however, does not suggest that Claimant is in any way limited in her ability to work; rather, it states "that she is restricted to day time driving only." Tr. 196. Claimant testified that the night blindness started at the same time as the Meniere's disease, which was diagnosed in 2001. Tr. 35-36. Yet, Claimant apparently worked with this night blindness for five years thereafter. Significantly, in her hearing testimony, Claimant did not attribute her discontinuing employment to "night blindness," but to a back injury suffered on the job when she bent over to pick up a shirt on the floor. Tr.

---

[11] As noted supra, Claimant was released to light duty not only by her treating orthopedist, but also by the medical clinic she frequented.

30. As Claimant enjoys many options for traveling to a workplace, her inability to drive at night does not preclude her performing sedentary work.[12]

Although exclusive reliance on the Guidelines is not appropriate when nonexertional limitations are sufficiently severe as to prevent a wide range of employment at a designated level, Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985), the record here clearly supports the ALJ's findings that Claimant does not suffer from any significant nonexertional limitations and that she is able to perform a full range of "sedentary work." Tr. 17. In the absence of any significantly limiting nonexertional impairment, there was no need for a vocational expert. And given her ability to perform a full range of "sedentary work," the ALJ properly applied the Medical-Vocational Guidelines to find that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 21. The ALJ, therefore, correctly concluded that Claimant is "not disabled" under the Social Security Act. Tr. 22.

V.    CONCLUSION

Claimant had a fair hearing and a full administrative consideration in accordance with the applicable statutes and the regulations. The ALJ properly considered and articulated adequate reasons for discounting the opinion of the one-time consultative examiner. The ALJ also properly considered and articulated adequate reasons to discount Claimant's subjective complaints, and he had substantial evidence from which to find that Claimant retained the capacity to perform a full range of sedentary work. Given the absence of significant nonexertional impairments, coupled with the ability to perform a full

---

[12] Claimant testified that she currently is able to drive, and she disclosed that she drives to her attorney's office and to the supermarket. Tr. 28.

range of sedentary work, the ALJ properly relied on the Guidelines to find that there are significant numbers of jobs in the national economy that Claimant can perform. Accordingly, the ALJ correctly concluded that Claimant is not under a "disability" as defined in the Social Security Act and is not entitled to a period of disability or disability insurance benefits.

Based on the foregoing, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 15) be DENIED. The undersigned further RECOMMENDS that Defendant's Motion for Summary Judgment (DE 22) be GRANTED and that the decision of the Commissioner be AFFIRMED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 22 day of June 2010.

BARRY S. SELTZER
United States Magistrate Judge

24

Copies to:

The Honorable James I. Cohn
United States District Court Judge

All counsel of record